Birchard, J.
The constitution of this state authorizes the gen•eral assembly to create new counties and to change or alter the boundaries of old ones. The only limit to this power is a prohibition against creating a new county of less, or the reduction of an old county to less, than an area of 400 square miles. There is nothing in the instrument whatever that further restricts this right -of the general assembly, and it is not necessary to hold, nor should it be held, by any implication that does not force itself irrresistibly upon the mind, that this convenient power of modifying the limits of counties is to be restricted beyond the letter of the constitution itself. It is a prerogative belonging to the sovereignty •of the state, and no sovereignty can be presumed to have parted with any power essential to the public welfare, nor can *it be adjudged to have parted with it, without express and unequivocal evidence showing the fact affirmatively.
This being the law, how stands the case of the defendant? He had been elected and commissioned as an associate judge of the •county of Huron, for a term limited by the constitution to a period of seven year if so long he behaved well, and if so long he resided in the county for which he was so elected.
The words of the constitution are (art. 3, sec. 3), “ There shall be appointed in each county, not more than three nor less than two associate judges, who, during their continuance in office, shall reside therein.”
What, then, is the effect of the commission which was granted to defendant, Choate? Did it authorize him to claim the office of judge for Huron county after his political connection with that community had ceased? Could he act as a conservator of the peace therein? The constitution is mandatory, “he shall reside therein.” No one could contend that a voluntary removal was *438 not a forfeiture and resignation of his office. Indeed the legislature of this state have, by express enactment, declared that it shall be so held. Can it make any difference when this removal is effected by the exercise of a constitutional right of the general assembly and by an act of omission in the officer? It seems to us it can not. It is, however, alleged that this rule will enable the legislature, at any time, by a general law, to oust from office, without the form of impeachment and in violation of the spirit of the constitution, many associate judges and any president judge of this state, by changing the limits of the counties and of the circuits in which they severally reside, so as to place their residence in some other county or circuit. Arguments of this nature, which assume the possibility that a co-ordinate branch of government will wantonly violate its plain duty, ought to be held of little weight in a court of justice where the legal presumption obtains that every legal functionary will faithfully observe the obligations of duty imposed upon him by his oath of office. The-general assembly, if it should ever attempt to violate a measure, as the argument supposes, could not effectually ^accomplish the object. The judges would, in all cases, be able to defeat the scheme by a seasonable removal within the newly prescribed limits of his county or circuit. So, in this case, had Choafe preferred to retain his office, he could have changed his residence after the passage of the act attaching Milan to the county of Erie. This he neglected to do at the time; neglected to do when the special court was called requiring his official attendance; neglected to do so at the May term of the court, and still neglected up to the 2d day of August.
We are of the opinion his right to the office of associate judge of the county of Huron was forfeited, and that he is guilty of the-usurpation and intrusion with which he stands charged in the information.
Our next duty is to ascertain the rights of Abijah Ives. Section 3 of the statute (Swan’s Stat. 770) requires us to pass upon his rights. He has received a regular commission as an associate judge of Huron county, and has been duly qualified, which is ample evidence of his right to claim and exercise the duties of that office, unless there is something in the case agree'd showing that the general assembly transcended their powers in going into-the election in the manner stated. It is contended that no elec *439 tion could have been legally held at that time, inasmuch as no vacancy had then occurred, and none could have been legally anticipated. If the facts were clearly such as the position assumes there would be, doubtless, greater difficulty in the case than wo now have to encounter. It is certain, from the agreed case, that at the time of the' election the general assembly had no reason to expect that a vacancy would be prevented by the removal of the defendant within the newly-prescribed limits of the county. We may presume that the members of the two houses understood the tenure of office, and the condition on which it was held by the defendant, Choate. If so, they knew that without such removal by him there would be a vacancy ; and, if so, it -would be but an ordinary exercise of their power to provide for it.
^Whatever may have been the practice of other states, wo know that, from the earliest history of Ohio, it has been the practice of the general assembly to provide lor vacancies that are likely to happen during the term of office of the persons composing their own body. Three of the members of this present court have held judicial offices on appointments thus made, and, indeed, the bench of the Supreme Court has scarcely ever been filled without one or more of its members holding his commission in virtue of such an appointment, and we have yet to learn that the right has been seriously questioned. A practical construction of the power conferred by the constitution — so frequently exercised by the general assembly — so long acquiesced in, and which is coeval with the instrument itself, ought not to bo questioned for slight reasons. We feel bound to consider it correctly settled that the legislature of this state has the right, at its regular session, to fill an elective office in all cases where a vacancy is to happen prior to the ensuing annual meeting of the general assembly.
From the agreed case, it appears that Ives’ election was held on March 14,1840, and that a resolution passed both houses declaring a vacancy, which bears date on the 17th day of March. There is this discrepancy in dates. It is, however, easily accounted for by persons familiar with the proceedings of legislative bodies. The election always appears to have been held on the true day. The journal, kept by the clerk, alone shows when the two houses assemble and'go into an election by joint ballot. This jouimal can not show a date varying from the true one. Not so with a joint resolution or a law. The date affixed to them is the date of the *440 signatures of the presiding officers,, and, in most cases, is of necessity two or three days subsequent to the action of the two houses. "We may suppose that, in this case, the resolution dated the 17th day of March, declaring a vacancy in the offices of the two associate judges of Huron county, actually passed on the morning of the day of the election and before the election was held; and wo think that, as to the right of Ives, we ought so to presume, on the principle that the official ^acts of legislative bodies are to be considered legal until the contrary appears. This, then, would avoid all objection to the claim of Ives. But, it maybe said that this reasoning will defeat a proposition, above stated, recognizing the right of a former incumbent to retain his office, by a removal in a reasonable time, within the limits of the county, as established by the act of the 6th of March. The objection would bo well founded if .the joint resolution were to be held conclusive of the fact of an election to forfeit the office, as regards the rights of Choate; but we do not hold that the legislature, any more than a court, could conclude his rights without giving him a hearing. He would, undoubtedly, be allowed to controvert the resolution and overthrow the presumptions arising from it, by proving facts inconsistent therewith. In this inquiry nothing growing out of the resolution has been allowed to prejudice his claim. His rights have been passed upon wholly independent of it, and have been considered and adjudged, as we trust they would have been if such a resolution were wholly disconnected with the cause. This was all he had a right to require at our hands, for it left his own claim to be decided upon its own merits; and those merits show a forfeiture of office by him. It matters not to him how the general assembly acquired a knowledge of the intended and actual forfeiture at so early a period, nor is it material for us to inquire. Since we have ascertained the fact that such a forfeiture occurred, it does not behoove us to hold that the legislature erred in making the discovery before us, and that, therefore, the election of Ives is void.
Judgment of ouster'against Choate, and judgment for Ives.
The same judgment was rendered in the case of the State, ex rel. Sears, v. Somers, upon a similar state of facts. Judge Lane dissented in both cases, and delivered the following opinion: