STATE OF MAINE,
By Information of Scott Wilson, Attorney General,
Ex Rel. John P. Deering

*vs.*

C. WALLACE HARMON.

York.   Opinion October 3, 1916.

*Distinction between an abandonment of an office by the incumbent and*
*his forfeiture of it by official neglect or misconduct. Proof*
*necessary to show an abandonment of an office. Right of*
*Governor, with advice and consent of council, to fill*
*by appointment a judicial office when*
*a vacancy in such office exists.*

1.  Where quo warranto proceedings are prosecuted in behalf of the State to determine by what authority the respondent is holding a public office, it is immaterial that the relator's term of office expired by limitation pending the proceedings.

2.  Under the Constitution the Governor, with the advice and consent of the Council, has authority to fill by appointment a judicial office when a vacancy in such office exists.

3.  The tenure of office of judges of municipal and police courts is fixed by the Constitution to be "for the term of four years."

4.  The Governor has no authority, either alone or with the advice of the Council, to remove a judicial officer whose term of office is fixed by law, except "on the address of both branches of the Legislature."

5.  The abandonment of an office is ipso facto a vacation of it, because the abandonment necessarily implies a voluntary and intentional disclaimer and surrender of it by him to whom it pertains, which in its effect is like a resignation of it.

6.  The official neglect of the incumbent of a public office, or his misconduct therein, although constituting just and legal grounds for a forfeiture of the office, do not produce a vacancy therein until it has been judicially determined and declared that the incumbent is guilty thereof, and that he has thereby forfeited his right to continue in the office.

7.  The office in question did not become vacant, because the relator had forfeited it by failure to perform its duties, or by any misconduct therein,

since no adjudication of that question has been made by any tribunal having authority to do so.

8. A public office may be abandoned by the incumbent so that a vacancy in the office is thereby created.

9. Whether the incumbent of a public office intended to abandon it is a question of fact, and may be inferred from the party's acts. If his conduct is such as to clearly indicate that he had relinquished the office, an intention to do so may be imputed to him.

10. The provision in the charter of the municipal court of Saco that the Judge of said court "shall reside during his continuance in said office in said Saco," means that the Judge of that court is required to actually reside in Saco, in the sense of being personally present there substantially all the time during his continuance in said office. Mere temporary absence from Saco, for a reasonably limited time, for business or pleasure, would not constitute a failure to reside there within the meaning of the charter.

11. The incumbent of a public office may abandon it so as to create a vacancy therein by removing from the state, county, or other district to which the officer's residence is restricted by the law of the office.

12. Where evidence justifies a finding, that about the middle of July, 1912, the relator voluntarily and intentionally moved from Saco to Piscataquis county there to give his entire attention to a new employment, intending to continue in that employment so long as it was open to him, and was satisfactory to him, and having no fixed intention to return to Saco to reside at any definite time, if at all, and did not return to Saco to live during the rest of his term of office and for a long time thereafter at least; and that from and after June or. July, 1912, he was voluntarily personally absent from Saco practically all the time, and was therefore not in a situation to perform, and did not perform, any of the duties of his office as Judge of said court, except in one or two instances. *Held;* that the relator ceased to "reside" in Saco, prior to the respondent's appointment on December 19, 1912, according to the meaning of that term as used in the Act establishing the municipal court of Saco.

13. Where the Judge of a local court, which has two sessions each month for civil business and is constantly in session for the disposal of criminal matters, voluntarily removes from the district where he is required to reside by the law establishing the court, without any fixed intention to return and reside there, but with an intent to make an indefinite stay elsewhere carrying on other business, thereby placing himself in a situation which he knows will prevent his attending to the duties of the office, and which will, under the law establishing the office, disqualify him to continue in it, he is presumed to have intended in so doing to abandon that office.

14. Evidence held sufficient to warrant the conclusion that on December 19, 1912, there was a vacancy in the office of Judge of the municipal court of Saco caused by the abandonment of that office by the relator, and that the respondent was duly appointed to that office and commissioned for the term of four years, which term has not yet expired.

Information in the nature of quo warranto filed by attorney general of State of Maine against C. Wallace Harmon requesting said Harmon to prove his right to hold the office of Judge of Saco municipal court. Bill, answer and replication filed. After hearing, cause reported to Law Court upon so much of the evidence as legally admissible. Law Court to render final judgment thereon. Information dismissed.

Case stated in opinion.

*Eben Winthrop Freeman, and Cleaves, Waterhouse & Emery,* for plaintiff.

*William R. Pattangall, and James O. Bradbury,* for defendant.

SITTING: SAVAGE, C. J., KING, BIRD, HALEY, HANSON, JJ.

KING, J. This is a proceeding by the attorney general, on the relation of John P. Deering, upon information in the nature of quo warranto against the respondent, C. Wallace Harmon, to test his right and title to the office of Judge of the municipal court of Saco.

The substance of the information, filed January 14, 1913, is, that the relator was duly appointed, February 2, 1909, by the Governor and Council, Judge of said court, and was commissioned as such for a term of four years; that on November 28, 1912, the Governor and Council determined that the office of Judge of said court was vacant by reason of the abandonment of the office by the relator, and by reason of his failure to reside in the city of Saco as required by the charter of said court; that on December 19, 1912 the Governor and Council appointed the respondent to be Judge of said court and he was commissioned for the term of four years; and that since December 20, 1912, he has used and enjoyed and continues to use and enjoy all the rights, privileges and benefits belonging to that office. It is unnecessary we think to state here, either in detail or in substance, the allegations of the answer of the respondent or of the replication in behalf of the relator, since it is conceded by both sides that the controlling question presented is whether there was a vacancy in said office at the time of the respondent's appointment thereto.

The term of office of the relator expired by limitation on February 1, 1913, soon after these proceedings were begun, and before

any hearing was held thereunder. But that fact is immaterial. The proceedings are prosecuted in behalf of the State by the attorney general to determine by what warrant or authority the respondent is holding the public office in question. That is a question of present public interest, for if the respondent is wrongfully holding the office there should be a judgment of ouster against him notwithstanding the relator is not now entitled to the office. *Com. v. Swasey,* 133 Mass., 538.

Under the Constitution the Governor with the advice and consent of the Council has authority to fill by appointment a judicial office when a vacancy in such office exists. And it is not contended, as we understand, that the respondent's appointment as Judge of said court on December 19, 1912, was invalid on any other ground than that there was no vacancy in the office at that time.

The tenure of office of judges of municipal and police courts is fixed by the Constitution to be "for the term of four years." And it may be stated at the outset, that the determination by the Governor and Council on November 28, 1912, that the office of Judge of the municipal court of Saco had become vacant by reason of the abandonment of it by the relator, and by reason of his failure to reside in Saco, did not create a vacancy in that office. That office could have become vacant only by the removal of the relator by impeachment for misdemeanor in office, or by his removal "by the Governor, with the advice of the Council, on the address of both branches of the Legislature," (Const. of Maine, Art. IX, § 5), or by his death, or resignation, or by his abandonment of the office. The Governor has no authority, either alone or with the advise of the Council, to remove a judicial officer whose term of office is fixed, except "on the address of both branches of the Legislature." And indeed it is not claimed in this case that the Governor and Council did remove the relator as Judge of said court, thereby creating the vacancy in that office which they filled by the respondent's appointment. If, as a matter of fact, the office was then vacant the Governor and Council were authorized and required in furtherance of the public interest to fill it. What they did, therefore, on November 28, 1912, was to determine for themselves if there was such a vacancy, and, having decided that there was, they appointed the respondent to that office. But their action was

not conclusive against the relator. They could not in that way deprive him of his office, if it then belonged to him to use and enjoy. No such power is vested in them in respect to such an office.

The vital issue involved in this case will appear the more distinct if we note briefly the distinction between an abandonment of an office by the incumbent, and his forfeiture of it by official neglect or misconduct. The abandonment of the office is ipso facto a vacation of it, because the abandonment necessarily implies a voluntary and intentional disclaimer and surrender of the office by him to whom it pertains, which in its effect is like a resignation of it. If the abandonment exists as a matter of fact, then a vacancy also exists, for that is the inevitable inference. But the official neglect of the incumbent of a public office or his misconduct therein, although constituting just and legal grounds of a forfeiture of the office, do not produce a vacancy in the office until it has been judicially determined and declared that the incumbent is guilty thereof and that he has thereby forfeited his right to continue in the office; and the reason for that is apparent, for the official neglect and misconduct which would sustain a forfeiture, do not establish, as an inference of fact or law, that the incumbent had voluntarily or actually relinquished the office. In such case he is still the incumbent of the office, subject, however, to be removed therefrom because he has forfeited his right therein. No claim is made, or could be made, in this case that the office in question became vacant because the relator had forfeited it by failure to perform its duties, or by misconduct therein, since no adjudication of that question has been made by any tribunal having authority to do so; and without such an adjudication there could have been no vacancy in the office for that cause.

The real question, therefore, is whether the relator at or prior to the time of the respondent's appointment on December 19, 1912, had in fact abandoned the office of Judge of said court.

It is a well settled principle that a public office may be abandoned by the incumbent so that a vacancy in the office is thereby created. To establish such abandonment, however, the proof must show a voluntary and intentional relinquishment of the office by the incumbent, for there can be no abandonment of an office or any other right without an intention, actual or imputed, to abandon it.

Such intention is a question of fact, and may be inferred from the party's acts. If his conduct is such as to clearly indicate that he had relinquished the office, an intention to do so may be imputed to him.

This case is before this court on report of the evidence which justifies, we think, a finding of the following material facts. The charter of said court provides that the judge thereof "shall reside during his continuance in said office in said city of Saco." The court is to be held in Saco, with sessions on the second and fourth Tuesdays of each month for the transaction of civil business, and it "shall be considered as in constant session for the trial of criminal offences." The relator was appointed Judge of said court (the last time) February 2, 1909, for the term of four years. He resided in Saco and was a practicing attorney. In April, 1912, he was employed by a Mr. Ray of Massachusetts to organize a corporation and assist in finding parties to finance it for the purpose of developing a township of timberlands in Piscataquis county, Maine. In pursuance of that employment it was necessary for him to be absent from Saco practically all the time. He decided, therefore, to abandon his law practice, for the time being at least, and about the middle of July, 1912, he closed his law office, ceased housekeeping in Saco, and with his wife (there being no children) went to the township in Piscataquis county, where his new employment required him to be, and lived there until the first of December, 1912, when he and his wife went to live at the Colonial Hotel in Bangor, and where he continued to live, except when away on business, until at least a long time after the respondent's appointment. It does not appear from the evidence, which was taken out September 30, 1914, that he was not then living at Bangor. His name was on the letter heads of the corporation as its "Assistant Manager, Bangor, Maine." He rented his house in Saco with his furniture therein, reserving two rooms, to a relative who began to occupy it in October, 1912. After June, 1912, he was in Saco a few times, but only temporarily, for business or pleasure. In June he made an arrangement to pay the recorder of the court two-thirds of his salary of $1,000. In September he presided at a hearing in the court on a manslaughter case. Other than that, he performed practically none of the duties of his office as Judge of

that court. There is some testimony that the recorder conferred with him a few times by letter or otherwise about court matters; but the evidence does not show that he gave any particular attention to the affairs of this office. On the other hand, it clearly appears that his time and attention were fully taken up with the duties of his new occupation in Piscataquis county. From a study of his testimony we conclude, that when he left Saco in June or July, 1912, he intended to give his entire attention and services to his new employment, and to continue in that employment so long as it was open to him and was satisfactory to him, but he did not know how long that would be; and that he then had no fixed intention to return to Saco to reside—he might do so or he might not, and future conditions and circumstances would determine which.

It is plain that the relator's neglect to perform the duties of his office for a considerable period of time preceding the respondent's appointment, although that may have been a just and sufficient ground of a forfeiture of his office, did not produce a vacancy in the office. No vacancy could result for that cause without a judicial determination to that effect, and no such determination has been made. Did the relator cease to "reside" in Saco prior to the respondent's appointment? We think he did, according to the meaning of that term as used in the act establishing the court. The provision of the statute that the Judge of said court "shall reside during his continuance in said office in said city of Saco" must be construed to mean something more than a mere legal residence in Saco—something more than having a "home" there which if continued might ripen into a pauper settlement, and something more than being an "inhabitant" there which might subject him to taxation or entitle him to vote there. It means, we think, that the Judge of that court is required to actually reside in Saco, in the sense of being personally present there substantially all the time during his "continuance in said office." Such personal presence is essential to the proper discharge of the important duties of the judge of a local court holding two sessions each month for civil business and being in constant session for the disposal of criminal matters. But it is not to be understood, of course, that a mere temporary absence from Saco by the Judge of said court,

for a reasonably limited time, on business or pleasure, would constitute a failure to reside there within the meaning of the act. That would be unreasonable. In the case at bar, however, the relator removed from Saco for an unlimited stay elsewhere without a fixed intention of returning at any time. We have no hesitation, therefor, in reaching the conclusion that he ceased to "reside" in Saco after June or July, 1912.

All the authorities seem to be in accord that the incumbent of an office may abandon it by removing from the state, county, or other district to which the officer's residence is restricted by the law of his office. The doctrine is thus stated in the note on page 517, Vol. 113, Am. St. Rept., following the report of *Attorney General* v. *Maybury* (141 Mich., 31) : "If the law requires an officer to reside in the county or district in which he holds his office, and during his term he ceases to reside in such county or district, his violation of the law operates as an abandonment of his office and creates a vacancy therein. However, a merely temporary removal or absence for a limited time from the county or district to which the law restricts his residence, with no intention of abandoning his office, or ceasing to discharge the duties thereof, will not result in terminating his title." An examination of the decisions in cases involving the question whether an incumbent of an office had abandoned it by removing from the district wherein he is required by law to reside, shows, we think, that wherein such decisions differ in their results, such differences arise because different facts and circumstances are found to exist and different inferences therefrom are drawn, and not on account of any disagreement as to the general principle that the incumbent of an office may abandon it by removing from the district to which the officer's residence is restricted. For example, in *Page* v. *Hardin,* 8 B. Mon., 648, a case upon which much reliance is placed in behalf of the relator, it was claimed that the secretary of state of Kentucky had abandoned his office by not residing in Frankfort in accordance with a legislative requirement. The constitution of that state, however, provided that "all civil officers of the commonwealth at large, shall reside within the state, and all district, county or town officers within their respective districts." And the court held that the constitutional provision on the subject of residence as a qualification of holding an office

covered the whole ground and was a denial of power to the Legislature to impose greater restrictions, and, therefore, that the secretary was not required by law to reside in Frankfort. "The secretary," said the court in its opinion, "might reside out of Frankfort and at various distances, and yet keeping his office in Frankfort, he might perform personally, and in due season, every duty pertaining to his official character." Extended consideration was given in the opinion to the question whether the Governor had authority to adjudge an office vacant by reason of the neglect of official duty by its incumbent. And in that case the court recognized and declared that "an office may be voluntarily relinquished by removal from the state, county, or district to which the officer is restricted by the law of his office." The decision in that case, that the secretary of state had not abandoned his office by not residing in Frankfort, and that no vacancy in the office was created by the Governor's adjudication to that effect, under the facts there disclosed, is not a precedent for the relator's contention in this case that his failure to reside in Saco did not vacate his office. It is not to be expected that a decision in one case involving the question whether the incumbent of any office has abandoned it by his removal from the district where he is required to reside, can be of much value as a precedent for a decision in some other case involving a similar inquiry, since the primary question in each case is one of fact, whether the incumbent had an intention, actual or imputed, to abandon his office, and the determination of that question depends upon a consideration of all the facts and circumstances of the particular case. In the following cases the principles herein stated have been recognized and applied. *Relender* v. *State,* 149 Ind., 282; *Prather* v. *Hart,* 17 Neb., 598; *Attorney General* v. *Mabury,* 141 Mich., 31; *People* v. *Brite,* 55 Cal., 79; *Ehlinger* v. *Rankin,* 9 Tex. Cu. App., 424; 29 S. W., 240; *State* v. *Choate,* 11 Ohio St., 511. See also *People* v. *Shorb,* 100 Cal. 537. In some of these cases it appears that the law of the State had declared that the failure of an officer to reside in the place to which his residence is restricted while holding his office, vacates the office. There is no such expressed provision in Maine.

Did the relator's removal from Saco for an indefinite period and his residing elsewhere constitute an abandonment of his office

of Judge of said court? We are of the opinion that it did and that thereby the office became vacant. The statute expressly requires that the Judge of that court shall reside "during his continuance in said office" in Saco. The relator's act in removing therefrom for an indefinite stay elsewhere to carry on other business was voluntary and intentional. He thereby placed himself in a situation which disabled him to perform the important duties of the Judge of said court; and it is plain from the evidence that he did not intend to personally perform those duties during his indefinite absence. Moreover, his failure to reside in Saco, as the Judge of that court was required to do by the Act establishing it, legally disqualified him to continue to hold that office. He is presumed to have intended these inevitable consequences of his voluntary act. And it seems to us that the incumbent of a public office, who thus voluntarily puts himself, for an indefinite period of time, in a situation which he knows will prevent his attendng to the duties of the office, and which will, under the law of the office, disqualify him to continue in it, must be presumed to have intended to abandon it. That is what the evidence in this case shows that the relator did; and we think it must be held that in so doing he had an intention to abandon his office of Judge of said court. To hold otherwise would be to impute to him a wrongful purpose to continue in a public office after he had voluntarily disqualified himself to do so, and after he had intentionally placed himself in a situation which prevented him from performing the duties of that office.

Our conclusion, therefore, is that there was, on December 19, 1912, a vacancy in the office of Judge of the municipal court of Saco, caused by the abandonment of that office by the relator; and that the respondent was duly appointed to that office and commissioned for the term of four years which term has not yet expired. Accordingly the entry will be,

*Information dismissed.*