STATE EX REL. THOMAS L. MARTIN v. MAXSIM PEPIN, JR.

SUPERIOR COURT  NEW LONDON COUNTY  FILE NO. 17045

Memorandum filed July 11, 1946.

*Hull, McGuire &Hull,* of New London, for the Plaintiff.

*E. Lea Marsh, Jr.,* of Deep River, for the Defendant.

INGLIS, J. This is an action in the nature of quo warranto brought to oust the defendant from the office of county commissioner for New London County.

The relator, on June 27, 1941, was appointed a county commissioner for New London County for the term of four years from the first day of October, 1941, and duly qualified, was sworn, and filed his bond. He had previously held an interim appointment, so that his bond ran from July 1, 1941 and was written for an "indefinite" term "until October 2, 1945." In July, 1945, however, an annual premium in advance was paid upon it.

The General Assembly in 1945 failed to appoint a successor to the relator and, on June 21, 1945, the Governor issued an appointment to the defendant to hold said office as of October 1, 1945 and until the sixth Wednesday after the convening of the General Assembly in 1947. The defendant assumed office under that appointment as of October 1, 1945. He has been duly sworn and filed his bond and, since October 1, 1945, he has regularly attended to all of the duties of the office and has received the compensation of a county commissioner.

It is now conceded by the defendant that because, by virtue of § 95e of the 1939 Cumulative Supplement to the General Statutes, the relator held office until his successor was appointed and qualified, there was no vacancy in the office at the time the

Governor undertook to give the interim appointment to the defendant and that, therefore, that interim appointment was invalid. *State ex. rel. Whelan* v. *Lindstrom,* 132 Conn. 50, 54. Conceding that, the defendant rests his case on the claim that the office has become vacant by reason of the relator's failure to keep his bond in force, and on the further claim that the relator has abandoned the office.

So far as the bond is concerned, the facts are that on order of the county commissioners the bonding company cancelled the relator's bond as of October 2, 1945, and rebated the unearned premium thereon to the county, by which the premium had been paid. About October 15, 1945, the agent who had procured the bond originally told the relator that the bond had been cancelled and the relator made no protest. Section 200 of the General Statutes, provides: "Each county commissioner before entering upon the performance of his official duties, shall give a bond to the state of ten thousand dollars. The neglect for a period of thirty days to file such bond, or to file a new or further bond if required, shall render his office vacant." It is clearly the intent of this statute to keep a county commissioner bonded at all times while he is in office. If his bond lapses or is cancelled, then a new bond is required. So here compliance with the statute required the relator to file a new bond within thirty days after his old bond was cancelled. He failed to do so and therefore under the statute his office became vacant at the expiration of thirty days after October 2, 1945.

Abandoment of a public office occurs when the incumbent totally avoids the performance of the duties of the office under such circumstances as to justify the inference that he intends to relinquish it completely. It is the equivalent of a resignation. It differs from a resignation only in that the relinquishment is not expressed in words. It is the actual forbearance to perform the duties of the office, plus the intention to give it up. 2 McQuillin, Municipal Corporations, (2d Ed.) § 316. It may result from an officer's acquiescing in his unlawful removal from office even though he does not appreciate that it is unlawful. Or it may result from his acquiescing in an unlawful election of a successor when he does not know that the election is unlawful. *Rieke* v. *Hogan,* 138 Ohio, St., 27; *Rainwater* v. *State,* 237 Ala. 482; 121 A. L. R. 981; *State ex rel. Flynn* v. *Ellis,* 110 Mont. 43.

In the present case, from October 1, 1945, until the present time the relator has not performed any of the duties of the office of county commissioner. Until June 14, 1946, he made no offer to perform those duties. He has attended no meetings, neither the meetings of the county commissioners nor the county meetings, nor has he participated in the inspection of the jails. He has done nothing with reference to the care of neglected and dependent children. As pointed out above, he has failed to take any steps to keep his official bond alive although he knew that it had been cancelled. He has never received nor demanded any salary.

· In early September, 1945, he knew that there was a question as to the validity of the defendant's appointment. He also knew that James J. Whelan, who in Fairfield County was similarly situated, was going to make a contest. At that time he did intimate that he would await the outcome of Whelan's contest before deciding what course he would follow. It is apparent, however, that thereafter he changed his mind, because at the county meeting on September 10, 1945, he congratulated the defendant on his appointment and wished him luck. This conduct, plus his conduct since October 1, 1945, compels the inference that by that date he was convinced that he had little chance of upsetting the Governor's appointment of the defendant, and that his intention was then and has been ever since, until the decision of the Whelan case, to relinquish the office to the defendant. It is therefore concluded that the relator abandoned the office.

Having concluded that the office formerly held by the relator has become vacant and has been abandoned by him, the question remains as to what effect, if any, the vacating and. abandoning of the office by him has on the defendant's right to the office.

Certainly, neither of these events occurred prior to the time the Governor made the interim appointment of the defendant. If the abandonment had occurred prior to the date of the successor's appointment, as it did in the case of *Hugh M. Alcorn, Jr., States Atty., ex rel. Donegan* v. *Gallic, Hartford County,* decided April 30, 1943 by Mellitz, J., which case is cited by the defendant, then of course there would have been a vacancy which the Governor could have filled ad interim. But having occurred after that time it certainly could not relate back to make valid that appointment which was invalid

when it was made. The relator had no power or function in the appointment his own successor. Clearly, if the attempted appointment of a successor to him was entirely nugatory, nothing which the relator could do or refuse to do could breathe the breath of life into that appointment. So far as making the defendant a de jure county commissioner is concerned, the appointment by the Governor must stand or fall on its own validity or lack of validity. The abandonment of the office by the former incumbent after the appointment was made can neither add to nor detract from the validity of the appointment.

The only other way in which the abandonment of the office by the relator might have a bearing on this case is by way of estoppel. It is contended by the defendant that the relator by reason of abandoning the office and thereby inducing him, the defendant, to perform the duties of the office has thereby estopped himself to maintain an action of quo warranto. There are some authorities which support this contention. *Regina* v. *Greene*, 2 Q. B. 460, 6 Jurist 777; *State ex rel. Flynn* v. *Ellis, supra;* Herman, Estoppel, 1886 Ed., p. 1402. Of these authorities, *Regina* v. *Greene* was decided by the Queens Bench and lays down the proposition flatly without argument or citation of authorities that the "person shall not be allowed to put the court in motion, who has concurred in that irregularity." That case is the only one cited by Herman to support his statement that abandonment of the office will estop a former incumbent to bring quo warranto, and the Ellis case rests exclusively on the Greene case and Herman. It might appear at first blush that *Rainwater* v. *State,* 237 Ala. 482; would also support the theory of estoppel, but there the action was one brought under a statute which permitted an adjudication not only of the defendant's right to the office but also the relator's. It is apparent that it might well be the law that a man who had abandoned an office would be estopped to demand an adjudication that he was entitled to the office when he would not be estopped to deny another's right.

The weight of authority, on the contrary, is that the defendant in quo warranto proceedings in the form of the common law can take no advantage of a claim that the relator is estopped by his having abandoned the office. *Longshore* v. *State,* 200 Ala. 267; *People* v. *Bass,* 15 Cal. App. 62; *People* v. *Sleight,* 302 Ill. 45; *State* v.*Sharp,* 27 Minn. 38, 51 C. J. P. 330, § 31,

and cases cited. Closely akin to this is a line of cases which hold that the fact that a relator has lost his title to office does not prevent a judgment of ouster being entered against a defendant if he is not entitled to the office. *State of Maine* v. *Harmon*, 115 Me. 268; *Commonwealth* v.*Swasey*, 133 Mass. 538.

The reasoning upon which these cases is based is that a proceeding to test the title to a public office is a matter in which the state, representing the public, has an interest. It is not a contest between individuals to enforce private rights but, being a prerogative writ, it is a proceeding in which the sover' eign is really the prosecutor. *State ex rel. Andrew* v. *Lewis*, 51 Conn. 113, 127. Indeed, it is not essential that the relator be a claimant for the office. He may be simply a taxpayer or a freeman. *State ex rel. Oakey* v. *Fowler*, 66 Conn. 294, 305; *State ex rel. Waterbury* v.*Martin*, 46 Conn. 479, 482. That being the situation, it is hardly logical to hold that the in' terests of the public in ousting from office a person not entitled to the office could be adversely affected and the ouster pre' vented simply because the person who started the proceedings in motion had himself abandoned the office.

On a plea in abatement to an appeal from a judgment of ouster of an acting chief of police in quo warranto, which plea was based on an allegation that since the judgment the acting chief of police had been removed by the efforts of the relator as captain of police by virtue of which office he had his only claim to be acting chief, our Supreme Court had this to say: ". . . we do not think the acts of either of the claimants should be allowed to prejudice the right of the other to a final deter' mination of the question of title. . . The powers of one of our largest municipal corporations as to a subject vitally affecting its peace and order are the subject of controversy, and in our opinion the appellant has a right to require us to review a judgment by an execution issued under which he was ousted from the exercise of the functions of chief of police before he was dismissed from the office of captain of police. These posi' tions are of a class in which the State [has] a deep and im' mediate concern. Whoever holds one of them, holds it as a trust from the State . . ." *State ex rel, Rylands* v. *Pinkerman*, 63 Conn. 176, 181. Though not directly in point, this quota' tion emphasizes the fact that when title to office is brought into question the State has an interest in the proceedings to

oust an improper incumbent which should not be defeated merely by reason of some conduct on the part of the relator.

Another reason why no estoppel against a relator should prevent an ouster from office is that an estoppel is a weapon of defense and not of offense. Its sole function is to prevent one person from enforcing a legal right against another when in good conscience he should not be allowed to do so. *Capitol National Bank & Trust Co.* v. *David B. Roberts, Inc.,* 129 Conn. 194, 201; *Stanio* v. *Berner-Lohne Co., Inc.,* 127 Conn. 431, 435. In quo warranto it is the defendant who is on the offensive. The only question is as to whether he has title to the office. The title of the relator to the office is not involved. The only purpose of the action is to determine whether the defendant shall retain the office or be ousted from it. Even though it should be determined that he is not entitled to the office, the court may not induct the relator. In the whole proceeding the burden of proving that he is entitled to the office is upon the defendant. And he can prevail only on the strength of his own title, not on the weakness of the claim of somebody else. *Meigs* v. *Theis,* 102 Conn. 579, 595; *State ex rel. Eberle* v. *Clark,* 87 Conn. 537, 541; *State ex rel. Southey* v. *Lashar,* 71 Conn. 540, 545; *State ex rel. Reiley* v. *Chatfield,* 71 Conn. 104, 110; *State ex rel. Oakey* v. *Fowler,* supra, 300.

Inasmuch as the relator does not stand to gain anything for himself in such a proceeding, it is clear that no personal conduct of his ought to prevent the removal of another person from the office to which the latter is entitled. To permit an usurper to defeat quo warranto proceedings by estoppel would be to permit him to establish his own right to the office solely on the weakness of another claimant's case, not on the strength of his own right. Such would be an anomalous use of the doctrine of estoppel.

It is therefore concluded that the fact that the relator has abandoned and vacated the office does not affect the question of whether the defendant is an usurper, nor does it preclude a judgment of ouster.

Judgment may enter ousting the defendant from the office of county commissioner for New London County.