HARRY W. VANDERBACH, PROSECUTOR-APPELLANT, v. HUDSON COUNTY BOARD OF TAXATION, DEFENDANT-RESPONDENT.

Reargued February 7, 1945—Decided June 21, 1945.

See, also, 130 *N. J. L.* 3; *Ibid.* 490.

For the appellant, *Maurice C. Brigadier.*

For the respondent, *Walter D. Van Riper,* Attorney-General, and *Joseph Lanigan,* Assistant Deputy Attorney-General.

The opinion of the court was delivered by

HEHER, J.   The Hudson County Board of Taxation found appellant guilty of eleven specifications of neglect of duty and misconduct as secretary of the board, and removed him from office under *R. S.* 54:3–10.

The Supreme Court on *certiorari* concluded, *inter alia,* that the charges were sufficiently specific, and that the board's statutory removal authority "was lawfully exercised."

Appellant was suspended from the office in question pending the presentment of the charges of misbehavior.   The resolution of suspension was adopted by the respondent board on August 5th, 1942; the accusations were reduced to writing and served upon appellant, with notice of a hearing on the ensuing September 26th; and the judgment of ouster was rendered on the following December 10th, after a hearing pursuant to the notice.   As to the suspension, the Supreme Court expressed the opinion that the board had thereby exceeded its authority, but that there was no resultant injury to appellant, since he had abandoned the office and therefore

"the subsequent action of the board in suspending and dismissing him became entirely unnecessary."

There is an utter lack of evidence to sustain the conclusion of abandonment. It rests solely upon the finding that appellant failed to recognize the authority of the board appointed by Governor Edison until the old board was enjoined in *mandamus* proceedings to turn over to the newly appointed body all official books, records, documents, insignia and appliances. *Vide In re Hudson County Board of Taxation,* 128 *N. J. L.* 574. But that course of conduct did not evince an intention to abandon the office; quite the contrary. The new board was appointed on July 23d, 1942. The old board continued to function until the issuance of the writ of *mandamus;* and appellant, confronted with the conflicting claims of title, apparently withheld recognition of the new board, but continued to perform his secretarial functions under the law. His failure to acknowledge the authority of the new board did not continue after the writ of *mandamus* issued. The first act of the new board thereafter was to suspend appellant from office, although he was present, ready to perform his official duties. Mr. Justice Bodine's opinion in the *mandamus* proceedings was filed on August 4th, 1942; and, as noted, the resolution of suspension was adopted on the following day, immediately after the new board was given possession of the official quarters and records. And the specifications of misconduct are at variance with the hypothesis of abandonment of the office. They are in considerable part based upon appellant's adherence to the old board as against the new until the writ of *mandamus* was awarded.

The acts relied upon to show abandonment and nonuser of a public office are to be assayed in the light of the principle that such an office is a public trust which imposes upon the incumbent the performance of certain duties for the common good. It is requisite that the abandonment be intentional, although the intention may be inferred from the officer's conduct and overt acts. The relinquishment must be total and absolute. Temporary nonuser or neglect of duty is not ordinarily sufficient to sustain the inference of abandonment. *People* v. *Bradford,* 267 *Ill.* 486; 108 *N. E. Rep.* 732; *State*

v. *Harmon,* 115 *Me.* 268; 98 *Atl. Rep.* 804. Such is the general rule. 46 *C. J.* 980, *et seq.;* 43 *Am. Jur.* 26, *et seq.*

There were not two secretaryships here—one to the old board and one to the new. There was but one such office; and the incumbent was protected against removal except for cause as specified in the statute. *R. S.* 54:3–9, 54:3–10. The secretary's continued recognition of the old board's claim of title and right of possession until it was rejected in the *mandamus* proceedings plainly did not constitute an abandonment of the office, nor a ground for removal. It is not unusual to maintain the *status quo* pending the adjudication of opposing claims to public office. And a subordinate officer's mere acquiescence in that course is not indicative of an intention to abandon his office. Nor does the law lay down the penalty of forfeiture of office for the secretary's failure correctly to evaluate the discrepant claims of title here.

And, such being the case, it was the Supreme Court's statutory duty to review the suspension and dismissal and "determine disputed questions of fact as well as of law, * * *." *R. S.* 2:81–8; *Harman* v. *Reed,* 108 *N. J. L.* 191. This the Supreme Court did not do, evidently for the reason that, having found a prior abandonment of the office, the suspension and dismissal "became entirely unnecessary." As to the allegations of misconduct, the court merely found, as said, that the respondent board's removal authority "was lawfully exercised." While this court has power, in such a situation, to determine the facts, the usual course is to order a remission of the record to the Supreme Court "to the end that that court shall hear and pass upon the questions involved according to the rules and practices of that court." *Jordan* v. *Borough of Dumont,* 105 *Id.* 197. This was deemed the preferable course in *Harman* v. *Reed, supra;* and under all the circumstances we think that such should be the procedure here. See, also, *Gibbs* v. *State Board of Taxation,* 101 *Id.* 371.

In these circumstances, we have no occasion to consider the question of whether the right of temporary suspension pending the service, hearing and determination of charges of misconduct is an incident of the removal authority, if that

course is fairly necessary in the public interest. Cases may be readily imagined where the continuance of the incumbent in office during the course of the disciplinary proceedings would seriously disadvantage the public. It might well interfere with official function in substantial particulars; and it might also hamper the investigation of the alleged misbehavior. Considering the object to be served by the removal provision, is not the lesser power included within the greater? For discussions of the subject, see *Douglas* v. *Megaarden,* 85 *Minn.* 41; 88 *N. W. Rep.* 412; *Chace* v. *City Council of Providence,* 36 *R. I.* 331; 89 *Atl. Rep.* 1066; *Gregory* v. *Mayor, &c., of the City of New York,* 113 *N. Y.* 416; 21 *N. E. Rep.* 119; *Cull* v. *Wheltle,* 114 *Md.* 58; 78 *Atl. Rep.* 820. A suspension for a definite period as a purely disciplinary measure, upon a conviction of misconduct after a hearing upon seasonable notice, is certainly comprehended in the power of removal. But an indefinite suspension by way of discipline, without the statutory hearing, is inadmissible, for that would be the equivalent of a removal. Such was the case in *State* v. *Jersey City,* 25 *N. J. L.* 536, and *Weinberger* v. *Hilfman,* 8 *N. J. Mis. R.* 32. But there is no need to pursue the inquiry now. It may well await the determination of the merits of the allegations of misbehavior.

Upon the signing of the *allocatur,* a rule granting leave to take depositions was entered at the instance of appellant. Later, the Supreme Court *en banc* allowed a rule "limiting the scope of the depositions to the subject of the truth or falsity of the charges upon which the suspension and removal of the prosecutor were based" (130 *N. J. L.* 3; *Ibid.,* 490); and it is now urged that this action, "in effect, precluded the prosecutor from taking any depositions to establish that he had been removed for political reasons only," in contravention of *R. S.* 54:3–9. Appellant frankly conceded in the Supreme Court that his proposed inquiry by depositions was to be confined to the "deliberations held by the board on the charges and the evidence received for the purpose of proving" that the judgment of removal "was not predicated on the evidence adduced," and that it "was not arrived at in the manner required by law, nor according to due process."

But the decisive question, after all, is whether the specifications of misconduct are within the statutory category, and are well founded in fact. The statute enumerates the grounds for removal. The incumbent is protected against ouster for "political reasons or for any cause other than incapacity, misconduct, nonresidence or disobedience of just rules or regulations established" by the board. *R. S.* 54:3–9. Removal for "political reasons" is the negation of removal for cause, and is invalid. And the converse of that proposition is likewise true. The statutory language, couched as it is in the negative, simply means that the officer is removable only for one of the stated reasons; and the validity of the ouster is tested by the quality of the evidence adduced in substantiation of the charges. Indeed, appellant now argues that the conclusion of a political motivation is inescapable, "for there was no competent evidence to support" the finding that he was guilty of the offenses laid against him.

The Supreme Court seems to have regarded the question as one relating solely to the qualifications of the board members as *quasi*-judges—one that is controlled by the principle of *Curtis* v. *Joyce,* 90 *N. J. L.* 47; *affirmed,* 91 *Id.* 685, and *In re Hague,* 103 *N. J. Eq.* 505, and the subject-matter was therefore a ground of challenge to the qualifications of the trial body and was not cognizable in the Supreme Court after the board had pronounced judgment. But there is an obvious difference between removal for one or more of the statutory grounds by *quasi*-judges having a political bias or prejudice, and removal for "political reasons" only. The former has reference to the qualifications of the judges; the latter, to the judgment rendered by the board, *i. e.,* whether the removal was grounded upon "political reasons or any cause other than" those set down in the statute. If so, the judgment is erroneous, even though no affidavit of prejudice was seasonably presented to the trial body. Here, the removal was grounded solely upon the finding of guilt of the neglect of duty and misconduct specifically charged; and, if the judgment of the local tribunal be ill-founded in fact or tainted with error in matter of law, it is correctible on *certiorari* by the Supreme Court, who, as stated, is under the specific duty

of weighing and evaluating the evidence and finding the facts anew. *Section 2:81–8, supra.* This measure serves to insure the exclusion of political and other alien factors in proceedings under the Removal Act.

Lastly, it is urged that *section 54:3–10 supra,* contravenes *article V, paragraph 11, article VI, section 3, paragraph 1, and article III, paragraph 1, of the State Constitution,* in that it permits the ouster by a local tribunal of a state civil officer for misbehavior constituting "misdemeanors in office," triable only in the court created for the trial of impeachments. This point is not well taken.

These secretaryships are not constitutional offices. The cited sections of the organic law do not deprive the legislature of the power to make provision for the removal of the incumbents of statutory offices. The authority to provide for the termination of the occupant's tenure for misconduct in office and neglect of duty is an incident of the creative power, and is not a grant of jurisdiction which by the constitution is vested exclusively in the court for the trial of impeachments. The legislature may condition the incumbent's tenure on good behavior in office, and clothe the appointing agency with power of removal upon the ascertainment of facts demonstrating a breach of the condition. Ouster for cause in such circumstances is a *quasi*-judicial function that is not deemed an encroachment upon the judiciary, or the court for the trial of impeachments in particular. *McCran* v. *Gaul,* 95 *N. J. L.* 393; *affirmed,* 96 *Id.* 165; *Finnegan* v. *Miller,* 132 *Id.* 192. *In re New Jersey State Bar Association,* 114 *N. J. Eq.* 261, is not to the contrary. There, judicial officers were involved; and it was pointed out by Mr. Justice Bodine that: "From the earliest times, judicial officers in England and America have been free from prosecution for their official acts except in the legislative forum. The reason is because it was early recognized that a judicial officer must be free to form his own judgments. * * * To subject a judge to a judicial inquiry as to his official acts would deprive him of the ability to make a free and unfettered judgment."

Here, the inquiry was before a tribunal exercising *quasi*-judicial functions. Such are not judicial powers in the con-

stitutional sense. And the power to remove for neglect of duty and misconduct in office does not constitute an invasion of the constitutional impeachment jurisdiction, for such do not necessarily constitute misdemeanors in office, not to mention the other essential differences between these processes. The authority to oust the incumbent secretary for such causes is "a different and broader power of removal than that by way of impeachment," and is therefore not one exclusively vested in the court for the trial of impeachments. *McCran v. Gaul, supra.*

The judgment is accordingly reversed; and the cause is remanded for further proceedings in conformity with this opinion. The question of costs is reserved until the cause is brought to final judgment.

*For affirmance*—PARKER, WELLS, DILL, JJ.  3.

*For reversal*—THE CHANCELLOR, BODINE, HETTER, PERSKIE, RAFFERTY, THOMPSON, JJ.  6.