VIRGINIA STEWART *v.* TOWN OF
WATERTOWN ET AL.
(SC 18499)

Rogers, C. J., and Norcott, Palmer, Zarella, McLachlan, Eveleigh and Harper, Js.

---

Argued October 19, 2011—officially released February 21, 2012

*Joseph B. Summa*, with whom was *Mary Jane Ryan*, for the appellants-appellees (defendants).

*William T. Blake, Jr.*, for the appellee-appellant (plaintiff).

*Opinion*

EVELEIGH, J. The principal issue in this appeal is whether a town clerk is entitled to receive continued salary payments as a matter of law while he or she is not performing his or her statutory duties as town clerk, but has not been removed from office pursuant to statute. The defendants, the town of Watertown (town), and certain of its duly elected or appointed officials,[1] appeal[2] from the judgment of the trial court, rendered after a hearing in damages, awarding damages to the plaintiff, Virginia Stewart, the former town clerk of the town. The plaintiff cross appeals from the judgment of the trial court, rendered after a jury trial, denying her claim for damages under 42 U.S.C. § 1983. On appeal, the defendants claim that the trial court, *Upson, J.*, improperly granted the plaintiff's motion for partial summary judgment because the town's duty to pay the plaintiff's salary is not limited solely to circumstances in which the town successfully has pursued recourse under the removal provision, General Statutes § 7-22.[3]

[1] The defendants in this case are: the town; the duly elected members of the town council, Joseph Pawlak, Paul Rinaldi, Carl Mancini, Antonio Guerra, Suzan Plowman, Jack Walton, Elaine Adams, Robert Kane and Raymond Primini (town council); Charles Frigon, as the duly appointed town manager of the town; and Shirley Dorazio, as the duly appointed town treasurer of the town.

[2] The defendants appealed from the judgment of the trial court to the Appellate Court, the plaintiff cross appealed, and we transferred the appeals to this court pursuant General Statutes § 51-199 (c) and Practice Book § 65-1.

[3] General Statutes § 7-22 provides: "Whenever complaint in writing is made to the state's attorney for any judicial district that the town clerk of any town in such judicial district is guilty of misconduct, wilful and material neglect of duty or incompetence in the conduct of such town clerk's office, such state's attorney shall make such investigation of the charges as such state's attorney deems proper and shall, if such state's attorney is of the opinion that the evidence obtained warrants such action, prepare a statement

The defendants contend that our common law and those statutes that govern the office of town clerk and the powers of municipalities with respect to their employees and public officers do not compel the conclusion that the town clerk's salary must be paid under any and all circumstances, regardless of whether she attends to and performs the established duties of her office, unless and until her term expires or she is removed under § 7-22. The defendants additionally contend that genuine issues of material fact exist as to, inter alia, the plaintiff's claims that the town hall was an environmentally unhealthy place for her to work and that her medical condition arising from her exposure to this unhealthy environment prevented her from performing her duties

in writing of the charges against such town clerk, together with a citation in the name of the state, commanding such town clerk to appear before a judge of the Superior Court at a date named in the citation and show cause, if any, why such town clerk should not be removed from office as provided in this section. Such state's attorney shall cause a copy of such statement and citation to be served by some proper officer upon the defendant town clerk at least ten days before the date of appearance named in such citation, and the original statement and citation, with the return of the officer thereon, shall be returned to the clerk of the superior court for the judicial district within which such town is situated. To carry into effect the proceedings authorized by this section, the state's attorney of any judicial district shall have power to summon witnesses, require the production of necessary books, papers and other documents and administer oaths to witnesses; and upon the date named in such citation for the appearance of such town clerk, or upon any adjourned date fixed by the judge before whom such proceedings are pending, the state's attorney shall appear and conduct the hearing on behalf of the state. If, after a full hearing of all the evidence offered by the state's attorney and by and on behalf of the defendant, such judge is of the opinion that the evidence presented warrants the removal of such town clerk from office, the judge shall cause to be prepared a written order to that effect, which order shall be signed by the judge and lodged with the clerk of the superior court for the judicial district in which such defendant resides. Such clerk of the superior court shall cause a certified copy of such order to be served forthwith upon such town clerk, and upon such service the office held by such town clerk shall become vacant and the vacancy thereby created shall be filled at once in the manner provided in section 9-220. Any witnesses summoned and any officer making service under the provisions of this section shall be allowed and paid by the state the same fees as are allowed by law in criminal prosecutions."

at the town hall or at any other alternative worksite that had been proposed to her. Further, the defendants argue that, under the circumstances, the plaintiff was required to follow the procedures for short-term or long-term disability that had been established pursuant to statute for the position by the town. The plaintiff responds that, as a public officer, she has a clear legal right to payment of compensation during her term of office, unless and until she is removed under § 7-22. We agree with the defendants' principal claim and conclude that there remain genuine issues of material fact. In her cross appeal, the plaintiff claims that the trial court, *Sheedy, J.*, improperly refused to charge the jury as to the existence of facts already found by a previous trial court, *Upson, J.*, thereby allowing the jury to improperly consider and reach a contrary conclusion in its deliberations. The defendants contend that the requested jury instructions were extraneous and contained irrelevant facts and erroneous dicta. We agree with the defendants. Accordingly, we affirm the judgment of the trial court in part, reverse the judgment of the trial court in part and remand the matter to that court for further proceedings on counts one and three of the plaintiff's complaint.

The following undisputed facts and procedural history are relevant to our disposition of this appeal. The plaintiff was elected to the position of town clerk of the town in the general election held in November, 2001. The town clerk's office is located in the town hall. Thereafter, the plaintiff was reelected town clerk in the November, 2005 election, to a term of office that expired in January, 2010. On October 18, 2005, indoor air quality testing was performed in the town hall in response to concerns about the work environment raised by the plaintiff at a meeting held on April 6, 2005. Subsequently, on January 20, 2006, in response to a complaint filed by the plaintiff, an inspection of the town hall was

performed by the state department of labor's division of occupational safety and health. On February 22, 2006, the plaintiff did not report for work. She wrote to the defendant Joseph Pawlak, chairman of the town council, on March 1, 2006, to inform the town council that she was suffering health problems that she attributed to environmental conditions in the town hall, and to demand action to protect town employees, the public and public records.

The plaintiff did not thereafter return to work at the town hall, or agree to alternative worksite arrangements offered by the defendants. The defendants notified the plaintiff of the procedures involved for requesting an unpaid leave. On April 17, 2006, the plaintiff, through her attorney, notified the defendants of her belief that the town clerk was exempt from time record requirements and that the defendants' handling of the situation raised concerns of retaliation and disparate treatment. On May 17, 2006, the defendants, through their attorney, notified the plaintiff that she would be paid until she exhausted her accumulated sick days, and that her compensation is controlled by town ordinance. The plaintiff was paid her salary through June 19, 2006, after which payments ceased. Subsequently, multiple indoor air quality and surface tests were performed at the town hall, as well as two occupational safety and health inspections. On or about June 26, 2006, the plaintiff filed a claim for workers' compensation benefits.

On November 20, 2006, the town council unanimously adopted a resolution authorizing the town manager to initiate removal of the plaintiff from the office of town clerk pursuant to § 7-22. Thereafter, the defendant town manager, Charles Frigon, wrote to the state's attorney for the judicial district of Waterbury requesting action pursuant to § 7-22. On January 31, 2007, the state's attorney notified the town council that he had determined

that good cause did not exist to file an action against the plaintiff under § 7-22.

Subsequently, on November 28, 2006, the plaintiff commenced this action against the defendants. In the first count of her complaint, the plaintiff sought a writ of mandamus ordering the defendants to restore all her salary and benefits from June 19, 2006, and to continue such payments for the duration of her term as the town clerk. In support of this claim, the plaintiff alleged that the defendants illegally had terminated without cause payment of the salary to which she had a clear legal right. The plaintiff claimed in the second count of the complaint that the town, town council and Frigon had violated her constitutional rights pursuant to 42 U.S.C. § 1983,[4] alleging that the defendants had denied her constitutional due process right to a hearing. Finally, in the third count of the complaint the plaintiff sought recovery of her lost salary. .

On July 30, 2007, the plaintiff moved for partial summary judgment as to her nonconstitutional claims advanced in counts one and three of her complaint. She asserted that, as a public officer, she was entitled to receive her salary as an incident to her office, without regard to any services she performed. She further asserted that the town's sole alternative to payment of her salary was to resort to the statutory removal

[4] Title 42 of the United States Code, § 1983, provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

procedure set forth in § 7-22 that requires a complaint alleging good cause and an investigation by the state's attorney determining that there is evidence that such cause exists. The plaintiff argued that, as she was not removed from office by the procedure set forth in § 7-22, she must be paid as the holder of the public office of town clerk. The defendants objected to the motion on the basis of three grounds: (1) there were material facts in dispute; (2) the plaintiff was not entitled, as a matter of law, to salary during the period in which she refused to perform the duties of her office; and (3) to the extent that the plaintiff may be entitled to any compensation during her absence from performing the duties of her office, the defendants provided the plaintiff with all the compensation due to her.

The trial court, *Upson, J.*, granted the plaintiff's motion for partial summary judgment on December 6, 2007, concluding that: (1) "[a]s to count one in the present case, mandamus is warranted because the plaintiff has met the burden required for the issuance of mandamus. The town's duty to pay this salary is clear, because the plaintiff, still functioning as the current town clerk, is a public official and as such her salary is incident to her office and does not depend upon services performed by her";[5] and (2) "[a]s to count three in the present case, the plaintiff is entitled to recover unpaid salary until the payment of salary resumes. Because the town may only act within the scope of express grants . . . the defendants in the present case did not have the discretion to suspend or terminate the plaintiff's salary. Suspending or terminating salary falls outside of the scope of § 7-22, which is the only apparent legislative remedy available to the town in the event of the town clerk's failure to properly fulfill the duties incident to her position. The defendants, therefore, acted improperly in terminating the

---

[5] The trial court relied on a purported common-law rule, enunciated in *Sibley* v. *State*, 89 Conn. 682, 96 A. 161 (1915), to establish this duty.

plaintiff's clear legal right to salary by treating her as a regular employee as opposed to an elected official and the plaintiff is entitled to payment of her salary." (Citation omitted.)

Therefore, the trial court granted the motion for partial summary judgment on the writ of mandamus. In light of this conclusion, that court rejected the defendants' claim that the plaintiff was limited to the leave benefits provided by the town to its officials. Subsequently, after a hearing in damages before a jury that resulted in a verdict for the plaintiff on her nonconstitutional claims, and pursuant to a stipulation of the parties as to the amount of damages to which the plaintiff was entitled, the trial court, *Sheedy, J.,* rendered judgment in favor of the plaintiff in the amount of $243,264.87 for lost wages. The court, however, rendered judgment in favor of the defendants on count two of the complaint based upon the jury's finding that there had not been a "constitutional violation of due process." This appeal followed. Additional facts and procedural history will be set forth as necessary.

On appeal, the defendants claim that the trial court improperly concluded as a matter of law that: (1) the principle regarding salary as an incident of public office that was cited by this court in *Sibley* v. *State,* 89 Conn. 682, 96 A. 161 (1915), is applicable to the plaintiff, and specific state statutes regarding the office of town clerk do not apply; and (2) chapter 2, article III, § 2-82 of the Watertown code of ordinances[6] (town ordinance),

[6] Chapter 2, article III, § 2-82 of the Watertown code of ordinances provides: "Salary and benefits. (a) The compensation of the town clerk shall be on an annual salary basis in lieu of the fees provided by the General Statutes of the state.

"(b) Such salary and the time and method of payment shall be determined by the town council.

"(c) All fees collected by the town clerk in the performance of the duties of the office of the town clerk shall become the property of the town and shall be paid by the town clerk, monthly, to the treasurer.

"(d) The town shall pay all of the expenses of the office of the town clerk, including the salaries of the clerk and assistants, and the cost of materials and supplies required by the office.

which provides the compensation and fringe benefits due to the town clerk, including limits on paid leave, does not apply to the plaintiff. We conclude, first, that even under the language in *Sibley* cited by the trial court, a public officer is not due her compensation if she wrongfully neglects her duties. We further conclude that, although the town had established a compensation schedule that provided paid time off and a disability pay plan, as permitted by statute, the plaintiff would not be limited to the leave provided under that schedule if she was willing to work but prevented from doing so by the defendants' conduct. Accordingly, we conclude that the trial court improperly granted the plaintiff's motion for partial summary judgment as to liability. Therefore, we reverse the judgment in part and remand the case for further proceedings on counts one and three in view of the fact that genuine issues of material fact remain, primarily regarding compliance with the compensation schedule and the reasons for the plaintiff's failure to perform the duties of her office.

I

We first address the defendants' claim that the trial court improperly concluded, as a matter of law, that *Sibley* v. *State*, supra, 89 Conn. 682, established the plaintiff's clear right to her salary and controlled the decision in this case, rather than the applicable state statutes. We agree.

The following legal principles guide our analysis of the plaintiff's claim. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted

"(e) The town will pay certain fringe benefits to the town clerk. The town clerk shall be eligible for fringe benefits in accordance with the fringe benefits provided to the town department heads, provided, however, the town clerk shall not be eligible for pension benefits or any benefits after leaving office."

show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court. . . . Our review of the trial court's decision to grant [a party's] motion for summary judgment is plenary." (Internal quotation marks omitted.) *Southwick at Milford Condominium Assn., Inc.* v. *523 Wheelers Farm Road, Milford, LLC*, 294 Conn. 311, 318, 984 A.2d 676 (2009).

The defendants' contentions also present questions of statutory construction, which constitute questions of law over which the court's review is plenary. "The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply. . . . When construing a statute, [the court's] fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable

results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *Testa* v. *Geressy*, 286 Conn. 291, 308, 943 A.2d 1075 (2008). "It is an elementary rule of statutory construction that we must read the legislative scheme as a whole in order to give effect to and harmonize all of the parts." *Mitchell* v. *Mitchell*, 194 Conn. 312, 320, 481 A.2d 31 (1984). "[S]tatutes in derogation of common law should receive a strict construction and [should not] be extended, modified, repealed or enlarged in its scope by the mechanics of construction." (Internal quotation marks omitted.) *Williams Ford, Inc.* v. *Hartford Courant Co.*, 232 Conn. 559, 581, 657 A.2d 212 (1995).

Finally, "[i]n deciding the propriety of a writ of mandamus, the trial court exercises discretion rooted in the principles of equity. . . . In determining whether the trial court abused its discretion, this court must make every reasonable presumption in favor of its action." (Citations omitted; internal quotation marks omitted.) *AvalonBay Communities, Inc.* v. *Sewer Commission*, 270 Conn. 409, 417, 853 A.2d 497 (2004). "Mandamus, a cause of action with deep roots in the American legal tradition, is the proper remedy for reinstatement of a public officer who, despite a clear legal right to remain in office, has been wrongfully ousted from that position. . . . Furthermore, [m]andamus neither gives nor defines rights which one does not already have. It enforces, it commands, performance of a duty. It acts at the instance of one having a complete and immediate legal right; it cannot and it does not act upon a doubtful or a contested right . . . .

"A party seeking a writ of mandamus must establish: (1) that the plaintiff has a clear legal right to the performance of a duty by the defendant; (2) that the defendant has no discretion with respect to the performance of that duty; and (3) that the plaintiff has no adequate

remedy at law." (Citations omitted; internal quotation marks omitted.) *Hennessey* v. *Bridgeport*, 213 Conn. 656, 658–59, 569 A.2d 1122 (1990). Because we conclude that the plaintiff did not have a clear legal right to receive her salary without performing her duties, the trial court's issuance of the mandamus was in error.

Both the plaintiff and the trial court place great emphasis on the following language from *Sibley* v. *State*, supra, 89 Conn. 685–86, in which this court denied a claim for workers' compensation benefits because the claimant was a public officer, a sheriff, and not a contracted employee: "The relation between an officer and the public is not the creature of contract, nor is the office itself a contract. So his right to compensation is not the creature of contract. It exists, if it exist[s] at all, as the creation of the law, and, when it so exists, it belongs to him not by force of any contract, but because the law attaches it to the office. . . . Unless . . . compensation is by law attached to the office, none can be recovered. Compensation to a public officer is a matter of statute and not of contract and it does not depend upon the amount or value of the services performed, but is incidental to the office." (Internal quotation marks omitted.) Id.[7] The plaintiff argues that the common-law principle enunciated in *Sibley* is clear to the effect that a public officer is paid for the office, and neither the amount of time on the job nor the quality of the service is relevant. The plaintiff further urges us to construe narrowly chapter 92 of the General Statutes, which applies to town clerks, because it is a statutory scheme, the plaintiff argues, enacted in derogation of

---

[7] The statement that "[c]ompensation to a public officer is . . . incidental to the office"; *Sibley* v. *State*, supra, 89 Conn. 685–86; may be considered dicta, since it was not a central element of our determination that the office of sheriff did not fall within the definition of an employee for workers' compensation purposes. Two facts were central to the court's decision: first, that the public officer's salary was set by statute; and second, that a public officer is not involved in a master servant relationship. See id., 686–88.

the common law as expressed in *Sibley*. We conclude, however, that our common law does not establish a public officer's clear legal right to salary under all circumstances.

*Sibley* is not a case in which a public officer refused to work, without just cause. Instead, in *Sibley*, the distinction between an employee working for pay and a public officer being paid his salary for exercising his duty to the state, was critical to the determination of whether workers' compensation was the exclusive remedy for the plaintiff's claim. But nowhere in *Sibley* is it said that a public officer's salary is due even if he fails to fulfill his duty to the state or abandons his office. It is undisputed in the present matter that the payment of the plaintiff's salary was halted only after she failed to perform the duties of her office. In *Sibley*, we stated: "[T]he salary which was attached to the office was not given in payment for his services, but . . . to enable him to perform his statutory duty as one of the public functionaries of the [s]tate exercising a portion of its sovereign powers." (Citation omitted.) Id., 687.

Our case law is replete with statements indicating that payment for public office requires the official to be available to perform his or her duties if called upon to do so. Indeed, in *Farrell* v. *Bridgeport*, 45 Conn. 191, 195 (1877), this court stated: "[A] policeman of the city of Bridgeport is an arm of the law; he holds an office as a trust from the state; he is a preserver of the public peace; he is not the hired servant of a master; no contract relation exists between him and the city by which he is bound to its service; he can lay down his trust at any time according to his pleasure without exposing himself to an action for damages for breach of contract.

"As a rule, so far forth as public officers are concerned, *those only are entitled to the salary who both obtain and exercise their offices*. Payment follows the

actual discharge of duty, and not the formal offer to do it, no matter how honestly or persistently made." (Emphasis added.)

Later, in *Keegan* v. *Thompson*, 103 Conn. 418, 421, 130 A. 707 (1925), this court stated: "It is well settled that public officers occupying positions created by statute hold their offices by appointment and not by contract, *and are obligated to perform the duties of their respective offices* without other compensation than such, if any, as is attached by law to the office itself." (Emphasis added.)

Additionally, in *McDermott* v. *New Haven*, 107 Conn. 451, 453, 140 A. 826 (1928), this court stated: "The salary provided by law for a public officer does not arise out of contract and is not dependent on the amount and value of the services rendered, but it belongs to him because the law attaches it to the office he holds. . . . It is generally held that where a public officer is *wrongfully* suspended or expelled, he is entitled to recover the salary accruing during the period he is thus unlawfully removed from his office. . . . The contention of the defendant that the plaintiff abandoned his office is answered by the finding that he did not do so." (Citations omitted; emphasis added.)

More recently, this court noted in *Murach* v. *Planning & Zoning Commission*, 196 Conn. 192, 196, 491 A.2d 1058 (1985): "A public office is a position in a governmental system created, or at least recognized, by applicable law to which position certain permanent duties are assigned, either by the law itself or by regulations adopted under the law by an agency created by it and acting in pursuance of it. . . . We have said that a public office is a trust conferred by public authority for a public purpose, and involving the exercise of the powers and duties of some portion of the sovereign

power." (Citations omitted; internal quotation marks omitted.)

Therefore, it is well settled that, in our common law relating to public officers, there is a relationship between payment and performance of duty. In *Sibley* v. *State*, supra, 89 Conn. 685–86, this court held that a public officer's pay is a creature of statute and not a negotiated contract and, therefore, he is neither paid for overtime nor is his pay reduced if his performance is questioned. *Sibley*, however, does not stand for the proposition that a public officer can, without good reason, fail completely to perform the duties of that office and still be paid. This very notion is contrary to the ideals of holding the office as a public trust, and exercising the office in order to be paid—ideals that were expressed in the *Farrell, Keegan* and *Murach* decisions. In *McDermott* v. *New Haven*, supra, 107 Conn. 453, this court made clear that a public officer's right to a salary under these circumstances depends upon a factual determination that the officer was wrongfully suspended or expelled.

The decisions of other states are also instructive in this regard. In *St. Louis* v. *Whitley*, 283 S.W.2d 490, 493 (Mo. 1955), the Missouri Supreme Court noted that "[p]ublic officials are entitled to the compensation incident to the offices to which they are elected or appointed; and it may be that they are entitled to the emoluments of the offices even though they perform no services. . . . But this rule and the public policy upon which it is based does not affect and is not to be confused with the equally and obviously well-established principle that public funds are trust funds . . . and public officers entrusted with their expenditure are trustees of all such funds. . . . A fortiori, it is indeed a plainer fundamental, when the office is a sham and no services have been performed, that the payment or acceptance of payment from such trust funds is an

unfaithful discharge of duty." (Citations omitted; internal quotation marks omitted.) See also *Maryland Casualty Co.* v. *Kansas City*, 128 F.2d 998, 1003 (8th Cir. 1942); 67 C.J.S., Officers §§ 207, 271 and 273 (2002); 4 E. McQuillin, Municipal Corporations (3d Ed. Rev. 2011) § 12.230, pp. 176–79. Further, excluding temporary absences, if unequivocal overt acts or a continued course of conduct fairly establishes that the incumbent intended to resign or abandon her office and such intention so expressed is acted upon by the proper authority, an irrevocable vacancy is created, which may be filled pursuant to law. See *People* v. *Hanifan*, 96 Ill. 420, 422 (1880); *State* v. *Harmon*, 115 Me. 268, 271, 98 A. 804 (1916); *Vanderbach* v. *Board of Taxation*, 133 N.J.L. 126, 128, 42 A.2d 848 (1945); 67 C.J.S., supra, §§ 102 and 103; 3 E. McQuillin, supra, § 12.100, pp. 512–18; see also *Doris* v. *Heroux*, 71 R.I. 491, 494, 47 A.2d 633 (1946).

Thus, we reject the plaintiff's argument that the common law establishes a public officer's absolute right to payment for the office. Therefore, whether the plaintiff's refusal to work constitutes an unwarranted refusal to perform her duties, or whether the working conditions at the town hall or other sites proposed by the defendants excused the nonperformance, remains a factual issue for the trial court to consider on remand. Because the common law does not establish the absolute right to compensation, we also reject the plaintiff's contention that either the removal procedures under § 7-22 or any of the other statutes in the statutory scheme of town clerk compensation must be construed strictly because they are in derogation of the common law.

Next, we briefly review the governing statutory scheme. General Statutes § 7-34a reveals essentially a fee or payment schedule based upon both the amount and length of documents filed at the town clerk's office. The total amounts payable to the town clerk depend

upon the volume of work. For instance, the town clerk receives $10 for recording the first page of any document and $5 for each subsequent page. In addition, § 7-34a (c) provides: "Compensation for all services other than those enumerated in subsection (a) of this section which town clerks are required by the general statutes to perform and for which compensation is not fixed by statute shall be fixed and paid by the selectmen or other governing body of the town or city in which such services are performed." General Statutes § 7-34b (b), however, authorizes any town, by ordinance, to provide that the town clerk shall receive a salary in lieu of all fees and other compensation provided for in the General Statutes and permits the legislative body of such town to fix a salary. Thus, the legislature has clearly empowered the local municipality to determine the compensation for its town clerk.[8] Pursuant to § 7-34b

---

[8] General Statutes § 7-19 provides that an assistant town clerk, who, having taken the oath provided for town clerks, shall have all the powers and shall perform all the duties of the town clerk in the absence or inability of the town clerk. General Statutes § 7-20 provides that when any town clerk is unable to discharge the duties of his or her office and no assistant town clerk has been appointed, then the selectmen may appoint an acting town clerk, who, once sworn in, shall act as town clerk during such inability. The defendants maintain that when someone replaces the town clerk and acts in her place, that person is compensated in the same manner as the town clerk is compensated. They argue that if this court were to interpret the statutory scheme to require both the former town clerk and a new town clerk to be paid the town clerk's salary, it would lead to an absurd result. Because we conclude that the town clerk must adhere to the town compensation package, we need not address this specific argument. We note, however, that the wording of the two statutes suggests that the legislature has contemplated a situation wherein a town clerk may not be able to work, but may not have been removed pursuant to § 7-22. The presence of these statutes would seem to negate the plaintiff's argument and the trial court's conclusion to the effect that, if the town clerk is not removed pursuant to § 7-22, she must be paid regardless of whether she performs her duties. Indeed, § 7-22 does not indicate what happens to the town clerk's salary if she is not removed. The statute only deals with the grounds for removal. Further, and contrary to the plaintiff's argument and the trial court's decision, there is nothing contained in the wording of § 7-22 that would suggest that it is the exclusive method by which the town could properly stop paying the plaintiff. Certainly, §§ 7-19 and 7-20 contemplated situations wherein the town clerk could be absent from work yet not removed from office.

(b), the town in the present case enacted § 2-82 of the town ordinance.[9]

Therefore, in view of the fact that the legislature has determined that local municipalities may establish the salary of the town clerk, and the town in the present case has established both a salary and compensation package, we conclude that the plaintiff must follow the terms of that compensation package regarding her pay unless the working conditions provided by the defendants excused the nonperformance of her duties. See Watertown Code of Ordinances, c. 2, art. III, § 2-82. The plaintiff has already availed herself of the compensation package in the form of her salary and sick days. In the absence of an excuse, it was incumbent upon her to follow the town procedures regarding any additional compensation to which she may have been entitled. Therefore, we conclude that the trial court improperly determined that *Sibley* controlled this matter, and that the plaintiff had a clear legal right to be paid for the balance of her elected term, unless or until she was removed from office pursuant to § 7-22.

## II

We next address the defendants' claim that they are entitled to judgment in their favor because the plaintiff has been paid all compensation to which she was entitled. The defendants claim that, pursuant to General

[9] The town passed § 2-82 of the town ordinance pursuant to the mandate from the state and, in 1995, specifically amended the ordinance to address the issue of sick days, vacation days and insurance by providing that the town clerk would have the same salary and benefit scheme as department heads. The town council clearly intended that this was a total compensation scheme that provided for vacation, sick days, and short-term and long-term disability during periods of absence. See footnote 6 of this opinion for the text of § 2-82 of the town ordinance.

Statutes § 7-148 (c),[10] the town was empowered to create a benefit package for the plaintiff with which she was obligated to comply. Because the defendants have paid the plaintiff the maximum sick leave and vacation time to which she could have been entitled under the package adopted by the town, the defendants now claim that they are entitled to prevail. We disagree.

Even if we assume, arguendo, that the defendants' representations as to the benefit payments are accurate, they are not entitled to judgment in light of other disputed issues of material fact.[11] Specifically, in light of the facts alleged, our resolution of the common-law issue in part I of this opinion does not dispose of the question of whether the plaintiff is entitled to her salary during the period in which she failed to perform her duties. Although the plaintiff is not entitled to such payment during a period in which she wrongfully refuses to perform her duties, she essentially has alleged that she was willing to perform her duties, but that the defendants effectively prevented her from doing so as a result of their failure to remedy unhealthy conditions at the town hall or to provide a reasonable alternative worksite. Thus, the plaintiff still may be able

[10] General Statutes § 7-148 (c) provides in relevant part: "Any municipality shall have the power to do any of the following, in addition to all powers granted to municipalities under the Constitution and general statutes . . . .

"(5) . . . (C) Provide for the employment of and prescribe the salaries, compensation and hours of employment of all officers and employees of the municipality and the duties of such officers and employees not expressly defined by the Constitution of the state, the general statutes, charter or special act . . . ."

[11] For example, and not as a declaration of limitation: (1) Was the town hall an environmentally unhealthy place for the plaintiff to work? (2) Was the plaintiff's medical condition caused by the conditions in the workplace? (3) Did the plaintiff's medical condition prevent her from performing her job duties at the town hall, or at any other alternative worksite that had been proposed to her? (4) Did the plaintiff's medical condition entitle her to either the short-term disability plan or the long-term disability plan offered by the town?

to prevail if she can prove these allegations. Accordingly, rendering judgment for the defendants would be improper.

## III

Turning to the plaintiff's cross appeal, the plaintiff claims that the trial court improperly refused to charge the jury, as to count two of her complaint alleging that the defendants had denied her constitutional due process right to a hearing, that "a previous court had already determined that: (1) the plaintiff is a public official, not an employee, and she is not governed by the [town] rules and regulations and grievance procedures . . . (2) the state's attorney refused to conduct a removal proceeding, and as a result, the plaintiff had a clear legal right to receive her salary . . . and (3) the defendants did not have the discretion or authority to terminate the plaintiff's salary payments." In part I of this opinion we concluded that these determinations were improper for summary judgment: the plaintiff's first two requested instructions are improper as a matter of law, and the third is a legal question that requires a finding of dependent facts. Accordingly, we cannot grant the plaintiff the relief she is seeking.

Moreover, the plaintiff's requested jury instructions go to her right to a hearing, which was undisputed by the defendant. Our review of the record reveals that the findings that we determined were improper in part I of this opinion were not relevant to the jury's determination as to count two of the plaintiff's complaint. The issue before the jury in that count was whether the plaintiff was denied notice and an opportunity to be heard, not whether she had a right to such notice and opportunity. With respect to that count, the trial court charged the jury in relevant part: "I instruct you that generally due process requires that before this plaintiff was deprived of the right to her property interest—her

continued salary payments, the defendant town council must have afforded her written or oral notice of the public hearing on May 15, 2006, and an opportunity to be heard—to tell her side of the story. [The plaintiff's] claim in count two—is that she was not provided a hearing to tell the town council—on May 15, 2006—her side of the story. The defendants dispute this claim; they assert both she and her attorney were provided notice and had the opportunity—if they so chose—to be present and to be heard. That dispute is the centerpiece of count two—that is, did the defendants deprive the plaintiff of due process before terminating her salary? That is the dispute you must resolve." Accordingly, the plaintiff's claim on her cross appeal must fail.

The judgment is reversed with respect to the trial court's granting of partial summary judgment for the plaintiff and the case is remanded for further proceedings according to law; the judgment is affirmed in all other respects.

In this opinion the other justices concurred.