# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Devault Group, Inc.,                    :
                    Petitioner          :
                                        :    No. 794 C.D. 2021
            v.                          :
                                        :    Submitted: December 30, 2021
Jesse Brice (Workers' Compensation      :
Appeal Board),                          :
                    Respondent          :


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE ELLEN CEISLER, Judge


## *OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                          FILED: September 14, 2022


Devault Group, Inc. (Employer) petitions for review of a June 30, 2021 order of the Workers' Compensation Appeal Board (Board) that affirmed an order of a Workers' Compensation Judge (WCJ) granting a claim petition filed by Jesse Brice (Claimant). Upon review, we affirm.

## Background and Procedural History

The relevant facts and procedural history of this case are as follows.

In 2007, Claimant had "some hardware put into [his] right ankle." (Notes of Testimony (N.T.) at 20.) In 2011, Claimant had an x-ray of his right ankle. (Reproduced Record (R.R.) at 201a.) The x-ray indicated Claimant had "[two] screws traversing the talus [from] prior trauma to this location. The more inferior of the [two] screws is fractured." *Id.*

On October 8, 2019, Claimant filed a claim petition alleging that he sustained a right leg and right ankle injury during the course and scope of his employment on September 17, 2019. Claimant worked as a mixer truck driver for Employer, and he alleged that he stepped on a rock and rolled his ankle while washing his truck. Employer filed an answer denying the material allegations and the matter was assigned to WCJ Scott Olin for hearings. (R.R. at 5a.)

Several hearings were held from November 12, 2019, to June 25, 2020. (R.R. at 10a.) Before the WCJ, Claimant offered into evidence the deposition testimony of Claimant's medical expert, Glenn Rosen, M.D., who testified that Claimant suffered a posterior talus screw fracture of his right ankle as a direct result of the September 17, 2019 incident at work. (R.R. at 143a-201a.) Dr. Rosen further testified that Claimant underwent surgery for this injury, and his ankle had not fully recovered. (R.R. at 157a.) Additionally, Dr. Rosen testified the screw fracture happened because of the work incident. (R.R. at 158a.) Employer submitted into evidence the deposition testimony of Paul Horenstein, M.D., who performed an independent medical examination of Claimant on January 8, 2020. (R.R. at 264a-267a.) Dr. Horenstein explained that all of Claimant's ongoing ankle complaints were related to Claimant's preexisting arthritis of the subtalar joint and ankle joint. (R.R. at 212a-268a.) Dr. Horenstein believes that Claimant's right ankle injury has resolved and all that remains is Claimant's preexisting arthritis.

In his October 1, 2020 decision, the WCJ found the testimony of Dr. Rosen more credible than the testimony of Dr. Horenstein. (R.R. at 18a.) Importantly, the WCJ accepted as credible a portion of Dr. Rosen's testimony and rejected other portions as not credible. (R.R. at 17a.) Specifically, the WCJ noted that Dr. Rosen testified that a February 1, 2011 x-ray revealed that the interior screw from a prior ankle surgery, which was unrelated to the work injury, was already fractured, and that Dr. Rosen was, therefore, incorrect that the screw fracture happened as a result of the

2

September 17, 2019 incident at work. *Id.* Nevertheless, the WCJ found portions of Dr. Rosen's testimony regarding Claimant's increase in pain following the incident at work, and the need to address this injury with surgery, as credible and persuasive, and found that the increase in pain from an underlying condition constituted a new injury. (R.R. at 18a.)

The WCJ noted that many of the physical findings identified by Dr. Horenstein would require a finding that Claimant's swelling, high pain, and inability to ambulate from the work incident were resolved, and then "magically reappeared" immediately prior to Dr. Horenstein's examination. *Id.* Accordingly, the WCJ concluded that Claimant has established he sustained a work-related injury on September 17, 2019. (R.R. at 19a; WCJ's Conclusions of Law (C.L.) No. 3.) The WCJ ordered Employer to pay Claimant total disability benefits starting on September 18, 2019. (R.R. at 20a.)

Employer appealed to the Board, arguing that the WCJ's decision was not supported by substantial, competent evidence. (R.R. at 21a-30a.) In its decision, the Board noted that the WCJ accepted the testimony of Dr. Rosen as more credible than the testimony of Dr. Horenstein and that determinations of credibility are the prerogative of the WCJ. (R.R. at 35a.) Specifically, the Board stated:

> Claimant was able to meet his burden because the WCJ accepted both Claimant's own testimony regarding the circumstances of his work incident, and accepted, in part, Dr. Rosen's testimony regarding Claimant's right ankle work injury.[FN1] The WCJ further rejected Dr. Horenstein's testimony that Claimant was fully recovered from only a right ankle sprain and that all his symptoms were related to his preexisting arthritis. While [Employer] makes numerous arguments as to why the WCJ should have decided differently based on the evidence, the relevant inquiry in a substantial evidence analysis is not whether the record contains evidence to support facts other than those made by the WCJ; the critical inquiry is whether there is evidence to support the findings actually made. [(Citation omitted)].

3

We note the WCJ rejected Dr. Rosen's full diagnosis of Claimant's injury and only accepted it for the more limited diagnosis of a right ankle injury that required surgery. Because a WCJ is free to accept or reject, in whole or in part, the testimony of any witness, including medical witnesses, we determine no error in the WCJ's finding concerning the diagnosis of the work. [*Greenwich Collieries v. Workmen's Compensation Appeal Board (Buck)*, 664 A.2d 703 (Pa. Cmwlth. 1995)].

(R.R. at 36a-37a.)

On August 10, 2021, Employer filed a Request for Supersedeas with this Court. We found that Employer did not satisfy all four criteria set forth in *Pennsylvania Public Utility Commission v. Process Gas Consumer Group*, 467 A.2d 805, 808-09 (Pa. 1983), and therefore, denied the Request for Supersedeas.

Employer's petition for review is before the Court.

**Issues**

On appeal,[1] Employer raises the following two issues:

1) Whether the WCJ decision and description of the injury is not supported by substantial evidence, and whether the WCJ erred as a matter of law by substituting his personal medical knowledge for evidence in order to grant the Claim Petition?

2) Whether the WCJ's decision and findings are erroneous as they are based solely on Claimant's physician's equivocal assumptions and

---

[1] This Court reviews the WCJ's adjudication to determine whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated, or whether an error of law was committed. *MV Transportation v. Workers' Compensation Appeal Board (Harrington)*, 990 A.2d 118, 120 n.3 (Pa. Cmwlth. 2010); *see also* Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704. "Substantial evidence is such relevant evidence a reasonable person might find sufficient to support the WCJ's findings." *Frog, Switch & Manufacturing Company v. Workers' Compensation Appeal Board (Johnson)*, 106 A.3d 202, 206 (Pa. Cmwlth. 2014.)

4

opinions that an injury occurred and was caused by a recent event because of the temporal proximity of the event?[2]

(Employer's Brief at 4.)

## Discussion

In its first issue, Employer asserts the WCJ's decision is not supported by substantial evidence as the WCJ substituted his own personal medical knowledge for evidence. Employer argues there is "no evidence to support the finding or diagnosis that there was a 'right ankle injury [which] required surgery.'" (Employer's Br. at 26.)

It is well settled that the WCJ is the ultimate finder of fact and the exclusive arbiter of credibility and evidentiary weight. *LTV Steel Company, Inc. v. Workers' Compensation Appeal Board (Mozena)*, 754 A.2d 666, 676 (Pa. 2000). The WCJ is free to accept or reject, in whole or in part, the testimony of any witness. *Id.* As ultimate factfinder, the WCJ has exclusive authority to resolve conflicts in testimony. *Pennsylvania Turnpike Commission v. Workers' Compensation Appeal Board (Collins)*, 709 A.2d 460, 464 (Pa. Cmwlth. 1998). However, resolution of conflicting evidence cannot be supported by a mere announcement that the WCJ deemed one expert more credible and persuasive than another. *Daniels v. Workers' Compensation Appeal Board (Tristate Transport)*, 828 A.2d 1043, 1053 (Pa. 2003). Rather, there must be some articulation of the actual objective basis for the credibility determination. *Id.* The standard of review does not permit the Board or this Court to reassess which evidence is more persuasive; this determination is only for the WCJ as the factfinder. *Bedford Somerset MHMR v. Workers' Compensation Appeal Board (Turner)*, 51 A.3d 267, 272 (Pa. Cmwlth. 2012).

---

[2] In its brief, Employer makes several arguments as to why the WCJ should have decided this case differently, but that is of no moment. (Employer's Br. at 25-30.) Rather, this Court's standard of review is whether there is substantial evidence in the record to support the WCJ's findings. *Hoffmaster v. Workers' Compensation Appeal Board (Senco Products, Inc.)*, 721 A.2d 1152 (Pa. Cmwth. 1998).

Importantly, no authority requires a workers' compensation injury to carry a professional diagnosis or descriptive tag. *Meadow Lakes Apartment v. Workers' Compensation Appeal Board (Spencer)*, 894 A.2d 214 (Pa. Cmwlth. 2006). Pain itself, if causally related to employment, may be compensable as an injury. *Id.* at 217. A diagnosis may impact the credibility of testimony addressing the existence of pain or its relationship to employment, but it is not a legal precondition. *Id.* Moreover, "a WCJ can give more credence to a claimant's testimony regarding incapacitating pain than to a doctor's testimony." *Campbell v. Workers' Compensation Appeal Board (Antietam Valley Animal Hospital)*, 705 A.2d 503, 507 (Pa. Cmwlth. 1998).

Here, the WCJ accepted in part Dr. Rosen's testimony and rejected Dr. Rosen's testimony as to the work incident causing the screw fracture. During his testimony, Dr. Rosen testified that he diagnosed Claimant with a "posterior talus screw fracture of the right ankle" and that it was a direct result of the work incident on September 17, 2019. (N.T. at 15.) However, later in his testimony, Dr. Rosen stated that the same screw fracture was found on a 2011 x-ray of Claimant's right ankle.[3] The WCJ clarified this discrepancy in Dr. Rosen's testimony by stating "Dr. Rosen is wrong. A February 1, 2011 x-ray reveals the inferior screw from Claimant's prior ankle surgery was already fractured." (R.R. at 17a; N.T. at 34.) Moreover, the radiography reports from 2011 and 2019 were submitted into evidence, which include statements about the more inferior of the two screws being fractured. (R.R. at 193a, 201a.) Because the WCJ made this finding based on the discrepancy in Dr. Rosen's testimony and the 2011 and 2019 x-ray radiograph evidence before him, the WCJ did not substitute his personal knowledge for the medical evidence presented.

---

[3] The x-ray is mislabeled as an x-ray of Claimant's left ankle; however, Dr. Rosen testified that this is a typographical error and the x-ray is in fact of Claimant's right ankle. (N.T. at 33.)

Moreover, the WCJ credited the testimony of both Claimant and Dr. Rosen to find the work injury caused Claimant's increase in pain of his underlying condition in his right ankle. The WCJ noted Claimant did not have a highly symptomatic right ankle before the work incident and found his increase in pain thereafter credible. (R.R. at 17a.) Specifically, the WCJ relied upon Claimant's testimony that following the work incident, Claimant could not put any pressure on his right ankle because "it hurt[ ] to[o] bad." (R.R. at 21a.) Claimant further testified that he can only ambulate with a boot and crutches and his pain level is an eight out of ten. *Id.* Claimant stated he is "immobile" and unable to drive any motor vehicle. *Id.* Claimant testified he was able to perform all job tasks and was never reprimanded by Employer for failure to perform such tasks; however, after the work injury, Claimant was unable to perform his job. *Id.*

Similarly, the WCJ found portions of Dr. Rosen's testimony regarding Claimant's increase in pain following the work incident and the need to address the same with surgery persuasive, credible, and well-supported. *Id.* Notably, prior to September 17, 2019, Dr. Rosen had not treated Claimant's right ankle and had no prior workers' compensation issues with Employer. *Id.* Dr. Rosen testified that Claimant "should urgently see an orthopedic physician and no longer weight bear or carry on with his normal duties at work, which involved heavy lifting and climbing." (N.T. at 10-11.) In Dr. Rosen's opinion, the surgery Claimant had on his right ankle was directly related to the work injury. (N.T. at 16.) Therefore, the WCJ found Claimant's increase in pain from an underlying condition constituted a new injury that required surgery. (R.R. at 18a.)

Furthermore, the WCJ found "major credibility issues" with the testimony of Dr. Horenstein. (R.R. at 18a.) The WCJ then described his reasoning why Dr. Horenstein's testimony was not credible. (R.R. at 18a; N.T. at 21.) Specifically, the WCJ referenced that Dr. Horenstein agreed Claimant injured his ankle on September

7

17, 2019, during the work incident, but opined the sprain had "fully recovered" and all of Claimant's present physical findings were related to his preexisting arthritis that required surgery. *Id.* The WCJ called this "counter-intuitive logic" and stated "[t]o deem Dr. Horenstein credible, the [WCJ] would have to find that [Claimant's] swelling, high pain level, and inability to ambulate from the September 17, 2019 work incident resolved, and then these same symptoms mystically and magically reappeared immediately prior to Dr. Horenstein's examination." (R.R. at 18a.) Therefore, Employer could not satisfy its burden of proving that Claimant's disability had ended, nor could Employer meet its burden of proving that Claimant's current disability was not work related.

In its second issue, Employer asserts the WCJ's findings and decision are erroneous as they are based on Claimant's physician, Dr. Rosen. (Employer's Br. at 30.) Specifically, Employer argues that Dr. Rosen's opinions are equivocal medical testimony as to the causation of Claimant's injury. *Id.* Additionally, Employer argues that the WCJ erred as a matter of law in finding that because of the temporal proximity of the September 17, 2019 work incident, Claimant suffered a right ankle work injury that required surgery. (Employer's Br. at 30-31.) Employer argues Dr. Rosen's testimony is equivocal as Dr. Rosen stated, "certainly something happened to his ankle" and "certainly something must have happened." (Employer's Br. at 33.)

When the connection between the injury and the alleged work incident is not obvious, unequivocal medical evidence is required that an injury is causally related to the work incident. *Cromie v. Workmen's Compensation Appeal Board (Anchor Hocking Corp.)*, 600 A.2d 677, 679 (Pa. Cmwlth. 1991). "The question of whether expert medical testimony is unequivocal [ ] and, thus, competent evidence to support factual determinations is a question of law subject to our review." *Amandeo v. Workers' Compensation Appeal Board (Conagra Foods)*, 38 A.3d 72, 80 (Pa. Cmwlth. 2012). "In such cases, we review the testimony as a whole and may not base our

8

analysis on a few words taken out of context." *Id.* "Taking a medical expert's testimony as a whole, it will be found to be equivocal if it is based only upon possibilities, is vague, and leaves doubt." *Kurtz v. Workers' Compensation Appeal Board (Waynesburg College)*, 794 A.2d 443, 449 (Pa. Cmwlth. 2002). "[M]edical testimony is unequivocal if a medical expert testifies, after providing a foundation for the testimony, that, in his professional, he believes or thinks a fact exists." *O'Neill v. Workers' Compensation Appeal Board (News Corp. Ltd.)*, 29 A.3d 50, 57 (Pa. Cmwlth. 2011.)

Here, Dr. Rosen opined that "[Claimant's] injury was a direct result of him rolling his ankle while at work." (N.T. at 16.) As explained above, although there was a discrepancy in Dr. Rosen's injury diagnosis, the WCJ clarified that the screw fracture was present in both the 2011 and 2019 x-rays. (R.R. at 17a.) The WCJ then concluded Claimant's and Dr. Rosen's testimony established that there was causation between the work incident and Claimant's right ankle injury. *Id.* The WCJ found credible both Claimant and Dr. Rosen's testimony about Claimant's increase in pain following the September 17, 2019 work incident. *Id.* The WCJ cited to Dr. Rosen's testimony that Claimant had a "tremendous change in pain" directly after the work incident, which indicated "something occurred." (R.R. at 17a; N.T. at 37.) Furthermore, Dr. Rosen stated that "certainly something happened to [Claimant's] ankle enough to the point where he was unable to walk or bear weight and lift heavy weight and climb ladders." (R.R at 17a; N.T. at 37.) The WCJ referred to Claimant's and Dr. Rosen's testimony regarding Claimant's increase in pain following the September 17, 2019 to determine causation. Thus, there is substantial evidence in the record to support that Claimant's right ankle injury occurred during September 17, 2019 work incident.

Furthermore, Employer would have us implement a stringent standard of equivocality that permits no room for expressions of doubt. This is in opposition to the

law.  "[T]he law does not require every utterance which escapes the lips of a medical witness on a medical subject to be certain, positive, and without reservation or exception." *Bemis v. Workers' Compensation Appeal Board (Perkiomen)*, 35 A.3d 69, 72 (Pa. Cmwlth. 2011).  A medical opinion is not considered equivocal simply because the witness uses words such as "probably," "likely," and "somewhat," "so long as the testimony, read in its entirety, is unequivocal and the witness does not recant the opinion or belief first expressed." *Id.*  Therefore, we find when read in its entirety, Dr. Rosen's testimony is positive on the issue of whether Claimant's right ankle injury was caused by the September 17, 2019 work incident.

In conclusion, we hold the Board did not err in affirming the WCJ's conclusion that Claimant sustained a right ankle injury that required surgery related to his work incident on September 17, 2019.  Accordingly, we affirm.

_____
PATRICIA A. McCULLOUGH, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Devault Group, Inc.,           :
         Petitioner    :
                        :  No. 794 C.D. 2021
      v.           :
                        :
Jesse Brice (Workers' Compensation  :
Appeal Board),            :
         Respondent   :

## *ORDER*

AND NOW, this 14th day of September, 2022, the order of the Workers' Compensation Appeal Board is AFFIRMED.

_____
PATRICIA A. McCULLOUGH, Judge